MORGAN, LEWIS & BOCKIUS LLP
Michael D. Weil, Bar No. 209056
michael.weil@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
Fax: +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Jennifer Zargarof, Bar No. 204382
jennifer.zargarof@morganlewis.com
Anahi Cruz, Bar No. 324326
anahi.cruz@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501

Attorneys for Defendants,
THE ELEVANCE HEALTH COMPANIES,
INC. (f.k.a. The Anthem Companies, Inc.) and
ELEVANCE HEALTH, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIKISHIA BURRUS, on behalf of herself and all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>THE ANTHEM COMPANIES, INC., an Indiana corporation; ELEVANCE HEALTH, INC., an Indiana corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 22-5297<br><br>[Santa Clara County Superior Court Case No. 22CV402114]<br><br>**DEFENDANTS THE ELEVANCE HEALTH COMPANIES, INC. (FKA THE ANTHEM COMPANIES, INC.) AND ELEVANCE HEALTH, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>Action Filed: August 18, 2022 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT**, Defendants The Elevance Health Companies, Inc. (f.k.a. The Anthem Companies, Inc.) and Elevance Health, Inc. (hereinafter "Elevance" or "Defendants") hereby remove to the United States District Court for the Northern District of California the above-captioned state court action, originally filed as Case No. 22CV402114 in Santa Clara County Superior Court, State of California.

## I. INTRODUCTION

1. Removal to this Court is proper under 28 U.S.C. §§ 1441, 1446, and 1453 because (i) the aggregate number of putative class members is 100 or greater, (ii) diversity of citizenship exists between one or more Plaintiffs and one or more Defendants, and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million,[1] exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453.

## II. PROCEDURAL BACKGROUND

2. On August 18, 2022, Plaintiff Kikishia Burrus ("Plaintiff") filed an unverified putative class action complaint in the Superior Court of the State of California, County of Santa Clara, entitled *Kikishia Burrus, on behalf of herself and all others similarly situated, and the general public, vs. The Anthem Companies, Inc., an Indiana corporation; Elevance Health, Inc., an Indiana corporation; and Does 1 through 50, inclusive*, Case No. 22CV402114.

---

[1] This Notice of Removal relies on the nature and amount of damages that Plaintiff's Complaint places in controversy. Defendants refer to specific damage amounts and cite comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. But Defendants maintain that Plaintiff's claims lack merit and that Defendants are not liable to Plaintiff or any member of the putative class for any amount whatsoever. Indeed, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

3. On August 19, 2022, Plaintiff served Defendants personally with the Summons, Complaint, and Civil Case Cover Sheet. Copies of these documents, as well as the Proofs of Service, are attached as Exhibits A-D to the Declaration of Michael D. Weil ("Weil Decl.") in support of Defendants' Notice of Removal.

4. On August 29, 2022, Plaintiff served Defendants by mail with a Notice re: Order Setting Case Management Conference. A copy of this document is attached as Exhibit E to the Weil Decl.

5. On September 16, 2022, Defendants filed an Answer to Plaintiff's Complaint in the Superior Court for the State of California, County of Santa Clara. A true and correct copy of Defendants' Answer is attached here as Exhibit F to the Weil Decl.

6. In her Complaint, Plaintiff asserts causes of action on behalf of herself and members of the following putative class:

> "all persons employed by Defendants … in hourly or non-exempt positions in California during the Relevant Time Period [August 18, 2018 until judgment is entered]."

Weil Decl. Ex. A, Compl. ¶ 10.

7. The Complaint alleges nine causes of action: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay hourly wages; (4) failure to indemnify; (5) failure to provide accurate wage statements; (6) failure to timely pay all final wages; (7) unlawful deduction of wages; (8) unfair competition; and (9) civil penalties pursuant to the California Private Attorneys General Act ("PAGA").

8. For purposes of this removal only, Defendants assume the truth of Plaintiff's allegations.

### III. REMOVAL IS TIMELY

9. On August 19, 2022, Plaintiff served the Complaint on Defendants The Elevance Health Companies, Inc. (f.k.a. The Anthem Companies, Inc.) and

Elevance Health, Inc. through their registered agents for service of process. *See* Weil Decl. ¶ 9, Exs. D-E. This Notice of Removal is timely because Elevance filed it within thirty days of service of the Summons and Complaint. 28 U.S.C. §§ 1446(b), 1453; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) ("[I]f the summons and complaint are served together, the 30-day period for removal runs at once.")

## IV. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

10. The Complaint purports to state claims on behalf of Plaintiff and members of a putative class. Compl. ¶ 1. Thus, removal based on CAFA diversity jurisdiction is proper under 28 U.S.C. § 1441(a) if: (i) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs, (ii) diversity of citizenship exists between one or more plaintiffs and one or more defendants, and (ii) the aggregate number of putative class members is 100 or greater. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453. As explained below, Plaintiff's Complaint satisfies these CAFA standards.[2]

### A. The Proposed Class Consists of More than 100 Members

11. Plaintiff asserts claims on behalf of herself and "all persons employed by Defendants … in hourly or non-exempt positions in California during the Relevant Time Period [August 18, 2018 until judgment is entered]." Compl. ¶ 10.

12. A review of Defendants' records shows that, based on Plaintiff's definition, the proposed class contains well over 100 prospective, current and former employees. Indeed, based on the class definition alleged in Plaintiff's Complaint, there are over 6,400 putative class members. Declaration of Yaasmeen Rayford ("Rayford Decl.") ¶ 3.

---

[2] Elevance does not concede, and reserves the right to contest, Plaintiff's *allegations* that this action may proceed as a class action. In addition, Elevance does not concede and reserves the right to contest that any of Plaintiff's allegations constitute a cause of action against it under applicable California law.

13. Thus, the aggregate number of class members exceeds the jurisdictional threshold of 100 people. *See* 28 U.S.C. § 1332(d)(5)(B).[3]

### B. Elevance and Plaintiff Are Not Citizens of the Same State

14. To satisfy CAFA's diversity requirement, a party seeking removal must plead that one putative class member is a citizen of a different state than one defendant (i.e., so-called minimum diversity). 20 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

15. "An individual is a citizen of the state in which he is domiciled . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal 2002) (citing *Kanter*, 265 F.3d at 857). For purposes of diversity, citizenship is determined by the individual's domicile when the lawsuit is filed. *Lew v. Moss*, 797 F. 2d 747, 750 (9th Cir. 1986). Evidence of continuing residence creates a presumption of domicile. *Washington v. Havensa LLC*, 654 F.3d 340, 345 (3rd Cir. 2011).

16. Plaintiff admits that she "is and was, and at all relevant times mentioned [in the Complaint], an individual residing in the State of California." Compl. ¶ 4. The Complaint does not allege any alternate state citizenship. *See generally* Compl.  Elevance's records show that Plaintiff's last known home address is in California. Rayford Decl. ¶ 4. Therefore, Plaintiff is a citizen of California for purposes of diversity jurisdiction.

---

[3] Elevance reserves the right to supplement or provide the Court with additional briefing or information necessary to appropriately assess CAFA's jurisdictional requirements. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) (noting that a party may "cure[] its defective allegations…by amending its notice of removal.").

17. Moreover, the Complaint pleads claims on behalf of a putative class of individuals who worked for Defendants in California. Compl. ¶ 10. Thus, at least one putative class member is a citizen of California.

18. Pursuant to 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" is where its "officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meeting[.]" *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

19. Defendant The Elevance Health Companies, Inc. (f.k.a. The Anthem Companies, Inc.) is a corporation organized under the laws of the State of Indiana. Rayford Decl. ¶ 6. Its principal place of business and corporate headquarters is in Indianapolis, Indiana, where its officers direct, control, and coordinate corporate activities. *Id.* Similarly, Defendant Elevance Health, Inc. is a corporation organized under the laws of the State of Illinois. *Id.* ¶ 5. Its principal place of business and corporate headquarters is in Indianapolis, Indiana, where its officers direct, control, and coordinate corporate activities. *Id.* Thus, Defendants The Elevance Health Companies, Inc. (f.k.a. The Anthem Companies, Inc.) and Elevance Health, Inc. are citizens of Indiana and Illinois. 28 U.S.C. § 1332(c)(1).

20. For purposes of diversity jurisdiction under 18 U.S.C. § 1332, courts disregard the citizenship of defendants sued under fictitious names. 28 U.S.C. § 1441(b)(1). The citizenship of "Does 1-50" named in the Complaint is therefore immaterial to the jurisdiction inquiry.

21. Thus, the Complaint satisfies CAFA's minimal diversity requirement because Plaintiff and some other class members are citizens of California and

Defendants are citizens of Indiana and Illinois. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

### C. The Amount in Controversy Exceeds $5 Million

22. CAFA jurisdiction requires the aggregate value of the putative class members' claims to exceed $5 million (exclusive of interest and costs). 28 U.S.C. § 1332(d)(6).

23. Where, as here, a complaint does not plead a specific amount of damages, the petition for removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," consistent with the pleading standard under Rule 8(a). *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); Fed. R. Civ. P. 8(a). "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citation omitted).

24. CAFA does not require a defendant "to comb through its records to identify and calculate the exact frequency of violations." *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *7 (N.D. Cal. Dec. 30, 2019) (quoting *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)). Nor does CAFA require a removing defendant to "research, state, [or attempt to] prove the plaintiff's claim for damages." *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1217 (N.D. Cal. 2019) (citation and quotation marks omitted); *see also LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's conflation of "the amount in controversy with the amount of damages ultimately recoverable."). When assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v.*

*Vitran Exp., Inc.*, 471 F. App'x 646, 658 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

25. As explained below, the amount in controversy here easily exceeds $5 million.

### 1. Plaintiff's Sixth Cause of Action for "Wages Not Paid Upon Separation" (Waiting Time Penalties) Alone Puts At Least $4,980,000 in Controversy

26. Plaintiff alleges that "on behalf of herself and Waiting Time Penalties Sub-Class members, [she] seeks waiting time penalties" pursuant to Labor Code §203. Compl. ¶ 120. Under California Labor Code § 203, if an employer fails to pay all wages due upon termination in a timely manner, "the wages of the employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced" for up to 30 days. Cal. Labor Code § 203.

27. Of the individuals who fall within Plaintiff's class definition, no fewer than 1660 are former, full-time employees who separated from employment 30 or more days before the filing of the Complaint, *i.e.*, potentially entitled to full waiting time penalties pursuant to Cal. Labor Code § 203. Rayford Decl. ¶ 3. The average minimum wage in California during the relevant time period was more than $12.50.[4] *Id.* As such, the amount in controversy by Plaintiff's cause of action for Failure to Pay Wages at Time of Termination (Labor Code §§ 201-203) can be calculated as follows:

**$12.50 per hour * 8 hours per day * 30 days * 1,660 individuals = $4,980,000**

---

[4] The weighted average minimum hourly wage for the State of California during the limitations period serves as a conservative estimate of the average hourly rate of pay earned by the putative class members. However, Elevance regularly pays its non-exempt, hourly employees at a higher hourly rate of pay than the State of California minimum wage requirement. Nevertheless, Elevance will use the conservative estimate for the purposes of establishing the CAFA amount in controversy requirement is met.

28. Thus, Plaintiff's cause of action for Failure to Timely Pay All Final Wages puts at least **$4,980,000** at issue.

### 2. Plaintiff's Fifth Cause of Action for "Failure to Provide Accurate Written Wage Statements" Puts $13,515,000 in Controversy

29. Plaintiff alleges that "[she] and Wage Statement Penalties Sub-Class members have suffered injuries" pursuant to Labor Code Section 226 for Defendant's alleged failure to provide accurate wage statements. Compl. ¶¶ 108-09. Under California Labor Code § 226(e), recoverable penalties are "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e).

30. There were at least 5,300 putative class members who were employed for the entire year preceding the filing of the Complaint and received no fewer than 26 itemized wage statements each during such year.

31. As such, the amount in controversy by Plaintiff's cause of action for Failure to Provide Accurate Itemized Wage Statements can be calculated as follows:

**[$50 per initial violation + ($100 per subsequent violations * 25 subsequent violations)] * 5,300 employees = $13,515,000**

32. Thus, Plaintiff's cause of action for Failure to Provide Accurate Written Wage Statements puts **$13,515,000** at issue thereby satisfying the amount-in-controversy requirement of CAFA.

### 3. Plaintiff's Other Causes of Action Put Additional Amounts in Controversy, Clearly Exceeding the CAFA Threshold

33. In addition to the foregoing amount, Plaintiff's other causes of action place yet more amounts in controversy, further demonstrating that the CAFA threshold is satisfied. Plaintiff's First Cause of Action for Failure to Provide Meal

Periods alleges that Defendants "maintained a policy or practice of not providing Plaintiff and members of the Meal Period Sub-Class with uninterrupted, duty-free meal periods" and therefore "Plaintiff … seek[s] to recover unpaid premium wages[.]" Compl. ¶¶ 44-57.

34. Plaintiff's Second Cause of Action for Failure to Provide Rest Periods alleges that Defendants "maintained a policy or practice of not providing members of the Rest Period Sub-Class with net rest period [sic] of at least ten minutes for each four-hour work period, or major fraction thereof," and therefore "Plaintiff … seeks to recover unpaid premium wages[.]" Compl. ¶¶ 58-68.

35. Plaintiff's Third Cause of Action for Failure to Pay Hourly and Overtime Wages alleges that Defendants "failed to pay hourly wages to Plaintiff and Hourly Employee Class members for all time worked, including … overtime hours" and therefore "Plaintiff … seeks to recover unpaid straight time and overtime wages[.]" Compl. ¶¶ 69-92.

36. Plaintiff's Fourth Cause of Action for Failure to Indemnify alleges that Defendants "maintained a policy or practice of not reimbursing Plaintiff and Expense Reimbursement Class members for all necessary business expenses" and therefore "Plaintiff and Expense Reimbursement Class Members are entitled to restitution for all unpaid amounts due and owing[.]" Compl. ¶¶ 93-102.

37. Plaintiff's Seventh Cause of Action for Unlawful Deduction of Wages alleges that Defendants "have unlawfully collected or received from Plaintiff and Expense Reimbursement Class Members a part of wages theretofore paid by an employer to its employees" and therefore Plaintiff "demand[s]m all wages unlawfully deducted[.]" Compl. ¶¶ 111-125.

38. Plaintiff's Eighth Cause of Action for Unfair Competition alleges that Defendants "acquired money by means of unfair competition" by "failing to … provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five or more hours, by failing to pay

non-exempt employees for all hours worked, and by failing to reimburse them for all expenses[.]" Compl. ¶¶ 131-134. As a result, Plaintiff "seeks declaratory relief and restitution of all monies rightfully belonging to [her and UCL Class members] that Defendants did not pay them[.]" *Id.* ¶¶ 126-143.

39. Additionally, Plaintiff seeks recovery of attorneys' fees. Compl., Prayer ¶ 12. Estimated future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793-794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). The Ninth Circuit held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy. *Id.* at 795 and 796, fn. 6.

40. Defendants deny Plaintiff's claim for attorneys' fees. However, for purposes of removal, even though Defendants have already demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, Defendants note that the inclusion of future attorneys' fees would increase the amount in controversy by a material amount.

## V. VENUE

41. This action was originally filed in the Superior Court for the County of Santa Clara. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. §1441(a), because it encompasses the county in which this action has been pending.

## VI. NOTICE

42. Elevance will promptly serve this Notice of Removal on Plaintiff and will promptly file and serve a copy of this Notice of Removal with the Clerk of the

Superior Court of the State of California, County of Santa Clara, in which the action is pending, as required under to 28 U.S.C. § 1446(d).

43. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders served" upon Elevance as well as other documents filed in the state court action are filed concurrently with this Notice of Removal as exhibits to the Weil Declaration.

## VII. CONCLUSION

44. Based on the foregoing, Elevance requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Amazon requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: September 16, 2022          MORGAN, LEWIS & BOCKIUS LLP

By */s/ Michael D. Weil*
Michael D. Weil
Jennifer B. Zargarof
Anahi Cruz
Attorneys for Defendants
THE ELEVANCE HEALTH COMPANIES, INC. (f.k.a. The Anthem Companies, Inc.) and ELEVANCE HEALTH, INC.