UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIKISHIA BURRUS,<br><br>    Plaintiff,<br><br>    v.<br><br>ELEVANCE HEALTH, INC., et al.,<br><br>    Defendants. | Case No. 3:22-cv-05297-WHO<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 13 |

Plaintiff Kikishia Burrus filed this putative wage and hour class action in Santa Clara County Superior Court, and defendants Elevance Health Companies (f.k.a. the Anthem Companies, Inc.) and Elevance Health, Inc. (collectively, "Elevance") removed it to federal court. Elevance now moves to transfer the case to the Central District of California. Under Civil Local Rule 7-1(b), I find this matter appropriate for resolution without oral argument and VACATE the hearing on December 21, 2022.

Burrus is a citizen of Los Angeles, in the Central District, and the defendants are citizens of Indiana. All of the events giving rise to Burrus' claims (as opposed to those giving rise to the claims of putative class members, as described below) arose in the Eastern and Central Districts. Burrus filed another employment related case against Elevance in state court asserting that she lived in Los Angeles during the relevant time period. Accordingly, the interests of justice support a transfer. For the reasons set forth below, I will grant Elevance's motion.

**BACKGROUND**

Burrus filed this action in Santa Clara County Superior Court on August 18, 2022, and Elevance removed it to federal court on September 16, 2022. Notice of Removal ("Rem.") [Dkt. No. 1]. The allegations in the complaint arise from Burrus working remotely from home for

1   Elevance. *See id.* Ex. A Complaint ("Compl.") [Dkt. No. 1] ¶¶ 33-35.  She alleges that she was an
2   hourly worker and that Elevance violated several of her rights under state worker protection laws,
3   including—among other things—by failing to: reimburse her for equipment for working from
4   home; pay her for the time spent booting up and turning off her computer system; provide meal
5   and rest periods; and maintain accurate written wage statements. *Id.* ¶¶ 19-43.  She brings the
6   claims on behalf of herself and all those similarly situated. *See id.* 1:1-2.  The class period covers
7   "the time period beginning four years prior to the filing of this action until judgment is entered,"
8   *id.* ¶ 10, meaning that the first day of the class period was August 18, 2018.

9   In a declaration attached to her opposition to this motion to transfer, Burrus stated that she
10  worked for Elevance remotely from her home in Los Angeles, California, from 2015 until
11  approximately May 2017.  Opposition to Motion to Transfer ("Oppo.") [Dkt. No. 14] Declaration
12  of Kikishia Burrus ("Burrus Decl.") ¶¶ 3, 5.  She said she continued working remotely for
13  Elevance from her homes in Fresno and then Bakersfield, California, until the end of January
14  2022. *Id.*  In June 2022, Burrus says she moved to Riverside, California. *Id.* ¶ 5.

15  On August 22, 2022, Burrus filed an employment action against Elevance in state court in
16  Los Angeles, which the defendants attach to their motion as a request for judicial notice. *See*
17  Motion to Transfer Venue ("Mot.") [Dkt. No. 13] Req. for Judicial Notice Ex. 1 ("*Burrus* Superior
18  Court Case").  In that complaint, filed by the same law firm that represents her in this action,
19  Burrus said that she lived in Los Angeles while working for Elevance "at all relevant times." *Id.*
20  ¶ 4.  That complaint says Burrus worked for Elevance since 2008, *id.* ¶ 13, and that the issues
21  giving rise to that complaint began in February 2020, *id.* ¶ 14.  It is not clear from that complaint
22  whether the "relevant times" during which she lived in Los Angeles were from 2008 until the date
23  of filing or from February 2020 until the date of filing.

24  The complaint alleges that both Elevance Health Companies (f.k.a. Anthem Companies,
25  Inc.) and Elevance Health, Inc. are citizens of Indiana, which the defendants do not contest.
26  Compl. ¶¶ 5-6.

27  Elevance now moves to transfer this case to the Central District. *See* Mot.  The defendants
28  filed supporting declarations and a request for judicial notice. *See id.*  Burrus filed an opposition,

two declarations, and a request for judicial notice. *See* Oppo. Elevance filed a reply ("Repl.") [Dkt. No. 15]. There was no need for a hearing.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), where an action might have been brought in the transferee court, a district court may transfer any civil action to another district "(1) for the convenience of the parties, (2) for the convenience of the witnesses, and (3) in the interest of justice." *Martinez v. BMW of N. Am., LLC*, No. 3:19-CV-05479-WHO, 2019 WL 6727837, at *2 (N.D. Cal. Dec. 11, 2019) (citations omitted). District courts must "weigh multiple factors" in determining "whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The factors include:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Martinez*, 2019 WL 6727837, at *2 (quoting *Barnes & Noble v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011)). "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." *Id.* (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)). "It is not enough for a defendant to merely show that it prefers another forum, and transfer will also not be allowed if the result is merely to shift the inconvenience from one party to another." *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964)).

## DISCUSSION

Here, as in *Martinez*, there is "no question that the Central District is a proper venue" for Burrus' case against Elevance. *See id.* Burrus currently lives in the Central District and worked there for at least some of the class period. *See* Burrus Decl. ¶¶ 3,5. There is some question as to whether the Eastern District is a better venue, as discussed below. But the Central District is a proper venue, the defendants seek transfer to the Central District, and the plaintiff opposes or in the alternative seeks transfer to the Central District. *See* Oppo. 12:15-17. The question before me,

3

then, is whether the convenience factors and the interests of justice favor transfer to the Central District.

### I. Convenience Factors

### A. Plaintiff's Choice of Forum

Under section 1404(a), "the plaintiff's choice of forum always weighs against transfer." *Martinez*, 2019 WL 6727837, at *2 (quoting *Brown v. Abercrombie & Fitch Co.*, 13-cv-05205-YGR, 2014 WL 715082, at *3 (N.D. Cal. Feb. 14, 2014)). But that choice is given substantially less weight where "(1) the plaintiff's venue choice is not its residence, (2) the conduct giving rise to the claims occurred in a different forum, (3) the plaintiff sues on behalf of a putative class, or (4) plaintiff's choice of forum was plaintiff's second choice." *Id.* (quoting *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013)); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration." (citation omitted)).

At least three of those circumstances are present here. Burrus currently resides in the Central District, the conduct giving rise to the claims occurred in either the Central or Eastern Districts,[1] and Burrus is suing on behalf of a putative class. Additionally, Burrus filed another

---

[1] The defendants' request for judicial notice of the *Burrus* State Court case is GRANTED. *See Bunkley v. Verber*, No. 17-CV-05797-WHO, 2018 WL 1242168, at *2 (N.D. Cal. Mar. 9, 2018) (noting courts may take judicial notice of "matters of public record" but not of facts "subject to reasonable dispute" (quoting Fed. R. Evid. R. 201(b)); Request for Judicial Notice [Dkt. No. 13] Ex. 1. The plaintiff's request for judicial notice of the map of federal districts in California is GRANTED for the same reasons. *See* Supplement[al] Request for Judicial Notice [Dkt. No. 14] Ex. 2.
  As discussed in the background section, it is not clear whether the remote work that Burrus conducted for Anthem occurred at Burrus' home in Los Angeles, Bakersfield, Fresno, or some combination of the three, because the Burrus' allegations here seem to contradict those in her state court case. *See, e.g.*, Burrus Decl. ¶¶ 3, 5. But I cannot take judicial notice of the fact of her Los Angeles citizenship from that case, because it is apparently contested here.
  That said, Bakersfield and Fresno are both in the Eastern District of California, *see* Plaintiffs' Supplement[al] Request for Judicial Notice Ex. 2; E.D. Cal. Loc. R. 120, despite defendants' misstatement that "Bakersfield . . . [is] located in the Central District," Repl. 3:9. Therefore it is possible some of the events giving rise to this claim arose in the Eastern District. But here, defendants submitted a sworn declaration that her supervisors all worked from the Central District. *See* Mot. Ex. 2 Declaration of Yaasmeen Rayford ("Rayford Decl.") ¶ 4. It is not abundantly clear at this stage, then, whether the events giving rise to her claims occurred in the Eastern District, where she may have worked, or the Central District, where her supervisors

4

employment-related action against the same defendant-employer covering a similar time period in a state court located in the Central District. *See Burrus* State Court Case. Though this does not explicitly show that the Northern District was her "second choice," neither does it support granting substantial deference to her choice of venue here. *Cf. Martinez*, 2019 WL 6727837, at *1-2 (finding the Northern District was plaintiff's "second choice" venue where he previously filed the same case in the Central District, which he did not amend after dismissal without prejudice, but rather filed a new case in the Northern District).

### B. Party and Witness Convenience, Ease of Access to Evidence

Elevance argues that the Central District would be more convenient for Burrus, key witnesses, the attorneys, and evidentiary access issues. Mot. 6-9. Burrus' counterarguments focus on the convenience to unnamed putative class members and witnesses related to those putative class members; she asserts that she filed this action in the Northern District "in a good-faith attempt to litigate in a geographically convenient forum for potential witnesses" including Elevance's "remote workers all the way up the west coast from as far south as Costa Mesa, California, to as far north as Seattle, Washington." Oppo. 9:16-19.

"The convenience to the witnesses is the most important factor in a section 1404(a) analysis, and the convenience of non-party witnesses is more important than the convenience of the parties." *Martinez*, 2019 WL 6727837, at *3 (quoting *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014)). The defendants present declarations stating that Burrus' supervisors are located in the Central District, and that they informed plaintiff's counsel of this and of the fact that "all" the relevant witnesses were also in the Central District. *See* Rayford Decl. ¶ 4; Mot. Ex. 2 Declaration of Michael Weil ("Weil Decl.") ¶ 2. Burrus contends that "Defendants present no details as to who these 'direct supervisors' are or . . . what subject matter these persons would *need* to testify [about] in this Action," Oppo. 10:18-19, but she does not contest that her supervisors were and are in the Central District or that they would need to testify. She correctly points out that Elevance policymakers may be potential

---

worked. But it *is* clear that they did not occur in the Northern District.

5

1  witnesses, and they are apparently located in Indiana and Illinois. *See id.* 2:14-24; 10:19-21. But
2  as defendants note, the Northern and Central Districts are equally convenient for witnesses based
3  in the Midwest. And while it is the defendants' burden to show why the convenience factors favor
4  transfer, they met their burden for this factor—by showing that non-party witness-supervisors are
5  located in the Central District—and Burrus failed to present any reason this is incorrect, such as
6  pointing to any witness outside of the Central District. Accordingly, this factor weighs strongly in
7  favor of transfer.

8  Burrus repeatedly asserts that putative class members are located across the state and
9  witnesses related to those class members are also outside of the Central District. *See* Oppo. 1:22-
10 2:13, 9:15-28. "However, it is well established that determination of proper venue is based on the
11 named plaintiff, not unnamed or absent putative class members." *Miranda v. R&L Carriers*
12 *Shared Servs., LLC*, No. 18-CV-04940-TSH, 2018 WL 6199931, at *5 (N.D. Cal. Nov. 28, 2018)
13 (collecting cases). That is because "any projection at this point as to the nature and extent of any
14 particular putative class member's participation in the case would be purely speculative." *Perez v.*
15 *Performance Food Grp., Inc.*, No. 15-CV-02390-HSG, 2017 WL 66874, at *3 (N.D. Cal. Jan. 6,
16 2017) (citing *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at
17 *4 (N.D. Cal. Feb. 14, 2014)). Accordingly, I do not now weigh the convenience of the putative
18 class members or any alleged witnesses related to those class members who may or not participate
19 in this case. *See id.*

20 Additionally, and importantly, Burrus herself currently resides in the Central District.
21 Burrus Decl. ¶ 5; Oppo. 12:16-17 (requesting, in the alternative, transfer "to the Eastern Division
22 of Central District *where Plaintiff lives*" (emphasis added)). That favors transfer.

23 Finally, because neither party presents any real argument or dispute concerning the ease of
24 access to evidence, I find that access to the evidence is neutral and favors neither district.

25 **II.     Interest of Justice**

26 The remaining four factors considered by courts concern the interests of justice: each
27 court's familiarity with the applicable law, the feasibility of consolidation of other claims, local
28 interest in the controversy, and relative court congestion. *See Martinez*, 2019 WL 6727837, at *2-

6

3.

Both districts are equally familiar with the applicable law and regularly hear purported class actions in this area, which neither party contests. This factor is neutral.

With respect to the consolidation factor, Burrus asserts that the defendants want to transfer the case to the Central District because there is a related case there.[2] *See* Oppo. 11:15-26. But the defendants do not address the consolidation factor, and neither party addresses whether consolidation with other cases would be "feasibl[e]" as analyzed by this factor. *See Martinez*, 2019 WL 6727837, at *2. Without additional argument or context, I cannot assess whether this factor favors transfer. I find it neutral.

The parties dispute the local interest in the controversy. As discussed, Burrus is a resident of the Central District and so the Central District has a strong interest in her case. At least some of the events underlying this action occurred in the Central District, both because Burrus' supervisors are located there and because Burrus filed another employment related case against Elevance in a state court located within the Central District where she noted that at least some of the employment-related actions giving rise to her injuries occurred in that district. *See Burrus* State Court Case. In contrast, it is not clear what interest the Northern District has in the case beyond that Elevance apparently has offices and some job postings here. And because venue is based on the named plaintiff's claims, not putative or unnamed class members' claims, *Miranda*, 2018 WL 6199931, at *5, any interest stemming from actions related to those putative class members that occurred in this district is speculative and not relevant to the venue determination. This factor favors transfer.

Finally, the defendants submit documents concerning relative court congestion.[3] I find this

---

[2] I GRANT Burrus' request for judicial notice concerning the existence of the *Lures* litigation as public records, but not for the facts of the case contained within. *See Bunkley*, 2018 WL 1242168, at *2; Supplement[al] Request for Judicial Notice [Dkt. No. 14] Ex. 1.

[3] I GRANT the defendants' request for judicial notice of the existence of the Federal Court Management Statistics because the fact of its existence "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," but I do not take judicial notice of the truth of the facts asserted. Fed. R. Evid. 201(b); *see also Bunkley*, 2018 WL 1242168, at *2; Request for Judicial Notice [Dkt. No. 13] Ex. 2.

7

factor neutral.  First, it is not clear from the document how the cases are counted and what if any effect the over- or under-weighting of multi-district litigation has on the data.  Second, both the Northern and Central Districts see significant civil litigation each year.  This factor is neutral.

For those reasons, the defendants have met their burden to show that the interests of justice and convenience favor transfer to the Central District.  I am unconvinced by either party's arguments that the case was brought in this district in bad faith or that the defendants seek transfer in bad faith.  Accordingly, this case shall be transferred.

## CONCLUSION

For those reasons, the motion to transfer venue is GRANTED.  This case shall be transferred to the Central District of California.

**IT IS SO ORDERED.**

Dated: December 15, 2022



William H. Orrick
United States District Judge